The next case is Robertson v. MetLife Securities. Good morning, Your Honors. May it please the Court. I'm Mary E. Maloney for the Plaintiff Appellant, Freda Robertson, who is the Court-Appointed Guardian for her sister, Mary Catherine Hart. I want to tell you about something wrong in my brief and then tell you why you should vote in Plaintiff Appellant's favor. In my brief on page 36, I stated that the state law claims could not be dismissed because we had diversity. Upon further review, I was wrong. I did not have complete diversity, and I withdraw that point in my brief. The reason you should hold in Plaintiff Appellant's favor is that the MetLife salesman, Williams, falsified suitability questions in the annuity application in order to sell an unsuitable annuity, and MetLife profited in fees, all in violation of Section 10b of the Exchange Act and Rule 10b-5. In the Joint Appendix at A-203, the District Court held that the sale of an unsuitable security is not a violation of 10b and Rule 10b-5. This is patently incorrect. This district has long held in Brown v. E.F. Hutton, Dobbs v. Cigna, and many other cases, that the sale of an unsuitable security is a subset of a 10b action. We've used those words, but the cases are few and far between from what I've seen upholding a 10b-5 claim on a straight unsuitability analysis. Most of them involve omissions, a failure to disclose certain aspects of the security that is purchased. I'm a little concerned about the potential breadth of that doctrine, even acknowledging that the District Court may have been incorrect in what he said, as being contrary to statements that we have made. Because, you know, isn't every security that ends up potentially performing poorly turned out to be unsuitable? And particularly with regard to individual investors who are less sophisticated than institutional investors, I can imagine just a huge number of claims, if unsuitability ex post facto is all one needs to prove to make out a 10b-5 claim. Can you allay my fears? Yes, I can, Your Honor. And those fears are well placed, and that's in fact why there's some heightened pleading requirements in 9b to avoid strike suits by those type of investors. This is a different case. We have someone who is mentally deficient, who is totally incompetent, who was unable to determine anything about the scope of the suitability of this annuity. The brokers and the registered representative, Williams, had a duty to know the customer, and FINERA demands suitability requirements under Rule 2111. The reason this was unsuitable is not because the annuity was performing badly. It's unsuitable because Mary Catherine Hart had a vested annuity with its retirement income guaranteed plan that's cited in the record at 815 paragraph 36. They transferred her money in the safe annuity where she paid no fees, no surrender charges, no other fees. She had guaranteed income every month, and they sold her an annuity where she became subject to surrender charges. I have learned after filing my complaint, and while we haven't had discovery in this parties, because we were voluntarily going to mediation, I have learned MetLife profited over $42,000. They even took over $12,000 when Niagara County Supreme Court judge ordered a turnover of $225,000 to the Guardian. This is not in the record, right? I have in the record at 830 and 831 that MetLife was taking fees and surrender charges. I did not know the amount . . . I don't know the numbers. Yeah. I didn't know the amount at the time of filing the complaint. The district court judge, though, said that really the problem was not the sale of the annuity but the theft, that the annuity was a vehicle for these malefactors to prey on Ms. Robertson because they more easily could just withdraw and take her money from her, I gather, from the annuity account than they could have from the pension account. Why is that incorrect? It's not incorrect as far as what the thieves did, but it's incorrect as far as MetLife selling the security to Hart. Go ahead. But doesn't it raise a problem for you in a securities claim of loss causation? The cause of your client's loss in the case were not the unsuitability of the annuity or misrepresentations about it. It's that the cause of the loss was that the money was withdrawn by the merits. I mean, I think that was essentially the bulk of the district court's analysis, the thrust of it. To which I would say, what about the $42,000 that MetLife held themselves to? They were profiteering on the sale of this unsuitable security. That was about 10% of the money . . . Those are surrender fees? Yes, Judge. Surrender fees. They took a sales charge when they turned over the money in Judge Panepinto's order, and they took a fee to add this rider onto this annuity to get a guaranteed income every month. She already had that over at Xerox. She had that money there a long time. She didn't pay any other surrender charges. And the salesman falsified all these suitability questions. It's in the record at A21, paragraph 81. Section 9 of the application asked for suitability considerations. He falsified her income, whether this was replacing another annuity, whether she'd need money. That reflects his intent, but still, if the bulk of her losses came from the theft perpetrated by the merits, do we have enough left over to pursue her claim against MetLife? Because it's really the surrender fees, it seems to be, the loss that has the nexus to the unsuitability claim. Is that right? Well, there are other state law claims concerning the supervision of MetLife and allowing the thieves to take it, but those issues were not found by the district court. I think, Your Honor, we would be setting a very bad precedent if we said, well, MetLife just took a little bit of money selling this unsuitable security. We have to look at both things that were done. The part the district court looked at is, they said, you can't bring a claim for selling an unsuitable security, and that is simply wrong. What's your strongest case supporting an unsuitability cause of action under 10b-5? Brown v. E.F. Hutton. Your district decided that. In Brown, didn't we say there was such an action, but I'm not sure, did we uphold such an action? Were damages awarded on an unsuitability claim in Brown? I didn't think so. I don't know, but it upholds the point that it was an unsuitable security as a subset of the 10b action, Your Honor. I realize we say that, but I would very much like to know of a case in which we sustained the award of damages on an unsuitability claim that wasn't an omissions claim. Omissions and misrepresentations are actionable under 10b, but pure unsuitability seems to have been less frequently sustained. Honestly, I didn't find any case exactly like this one, where you have the sale to an incompetent who is unable to even speak. Anderson v. Beeland was another one. In Brown, that was a case involving 400 investors. In Brown, we said that there could be an unsuitability claim, but we did not sustain it. That's because it's different. You're dealing with 400 people looking at oil and gas partnerships. This is one woman who was mentally deficient, and the money was coming out of her safe annuity again with Xerox. She was a machinist for 40 years before her massive stroke. I think we have to protect people like this, Your Honor. And this could be the first case if there is no other such one. The fact is you have recognized that a sale of an unsuitable security is a violation and a subset of 10b. I see I'm out of time. Is there any? Good morning, Your Honors. May it please the court. I'm Penelope Taylor, and I represent the Appalese MetLife Securities, Inc., now known as MML Investors Services LLC, Metropolitan Life Insurance Company. And Charlie Williams. As Ms. Maloney pointed out, yes, there are ways in which incompetent individuals can be protected. But in this particular case, while there may be state law claims, possibly, this is not a securities fraud case. But you acknowledge, right, that we said in Brown that an unsuitability claim could be maintained by an investor who has sold something so wildly unsuitable for his or her own needs. That it constituted an artifice or device to defraud. And that's what apparently happened here. I mean, this was just an amazing sale of annuity to a person who was going to need cash to sustain herself. She was unable to care for herself. And there were, as your adversary points out, there were numerous falsifications on the suitability worksheet that Mr. Williams prepared. Why shouldn't that be actionable under 10b-5? Well, your honor, we did not dispute in the brief that suitability can be a basis for a 10b-5 claim. What's different here is this is not a situation where even assuming there was a lack of suitability. And again, we dispute that that really was spelled out in the complaint in sufficient detail. But even assuming if there was lack of suitability, the key factor missing here is loss causation. What about the surrender fees? What about all those, I don't know how many tens of thousands of dollars it was that even if the merits had wanted to steal from her and they had left her money in the pension, they could have taken it. But she would have been left with an amount that she now doesn't have because of MetLife's surrender fees. But the real cause of the losses here was the theft. Not of the surrender fees. The surrender fees, the same scheme could have been perpetrated with leaving all of the money had Charlie Williams not made the sale of the annuity. And I don't recall what Mr. Williams gained out of the sale, whether it was a commission or what. Well, I'd point out, your honor, that even if there's an allegation of misstatements, that these documents were prepared in the presence of individuals. There was an executed, there was a facially valid power of attorney. MetLife had to basically act in accordance with the power of attorney. So I do think that the critical factor here is though the lack of, the annuity was just the vehicle for the theft here. This is not a situation where there is securities fraud and loss causation. Unless you have any other questions, I have nothing further. Just want to point out again that the taking of the surrender charge is profiteering by the sale of an unsuitable security. Could you address your adversary's point about the power of attorney, please? Why was MetLife, how could it have ignored the power of attorney that was presented to it? I've said four cases in my brief, but quite simply, that transaction should be void. You can never purchase, and you can never use a forged instrument, including a power of attorney, and it should be void ab initiato. So that the, and that was one of the state law claims that we never got to at the district court, because this complaint was thrown out on a 12B6 motion because of the one federal cause of action. But there are extensive New York cases regarding the forgery of documents, including, most of them relate to real estate, but they would support the position of the forged power of attorney. William should have even asked about that. He used a power of attorney that was executed six days after this massive stroke by this woman. She was actually unconscious and in a coma in the hospital on the day that was executed. He knew at the least because he had put down that she was on social security disability. Know your customers would require, why is she on social security disability? What's going on with her? Turns out, I learned out after in the voluntary exchange of documents, that Hart was in the room at the time this was sold. Did you want to speak to the denial of the motion to amend? Yes, I would, your honor. We should be given leave to amend, even in MetLife's own case, the Malanese v Rustoleum. If a district court abuses its discretion, if it bases the ruling on a misapplication of the law, that decision should be overturned. The misapplication of the law here is that a sale of an unsuitable security is not a 10B violation, when in fact it is. This is a case, it's a very serious case. This woman has had essentially her entire life savings embezzled, but for what we're able to save and freeze in the course of the guardianship proceeding. We have learned with the exchange of documents, especially when you have someone who's incompetent and can't tell you anything of what went on, discovery is critical. We should be allowed to amend our complaint for those reasons. Thank you. Thank you both. We'll take it under advisement. Thank you, your honor.